Josephine L. KIRKLAND, and the United States National Bank of Omaha, a Nebraska Corporation, Executor of the Estate of Clarence L. Kirkland, Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 01892.

United States District Court
D. Nebraska.

Feb. 28, 1967.

William J. Hotz, Joseph Moylan and John H. Kellogg, Jr., Omaha, Neb., for plaintiffs.

Edward Ord, Atty., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

VAN PELT, District Judge.

By this action plaintiffs seek to recover alleged overpayments of income taxes and assessed interest for the years 1957, 1958, 1959, and 1960.

The alleged overpayments resulted from adjustments made by the Internal Revenue Service on the joint tax returns of Clarence Kirkland and his wife, Josephine L. Kirkland. Mr. Kirkland died on July 25, 1962. The plaintiff, United States National Bank, together with Mrs. Kirkland, are the executors of his estate.

■■ The death of Mr. Kirkland and the lack of adequate records has made this trial a difficult one. Mrs. Witt, the daughter of taxpayers, testified that after her father's death, many of his records were borrowed by certain trustees and that many of these records cannot now be found. Such a situation is unfortunate, but cannot alter the fact that plaintiffs in a refund suit such as this, have the burden of proving the legality and amount of any deduction claimed. United States v. Pfister, 205 F.2d 538, 542 (8th Cir. 1953); Barutha v. United States, 197 F.Supp. 182, 185 (E.D.Wis. 1961). The court is not at liberty to assume that had Mr. Kirkland or his records been available, the allegations could have been proved.

The issues in this case are in four areas: (1) expenses incurred in connection with real property allegedly held for resale; (2) taxable capital gain arising out of the sale of a residence; (3) travel and entertainment expense; and (4) charitable contributions.

(1) *Deductions for expenses on North Post Road Property.*

The property located at 4110 North Post Road, Omaha, Nebraska, had originally belonged to Mrs. Kirkland's father, an early Omaha architect. In 1951, when Mrs. Kirkland acquired title, the property was in a state of disrepair due to a lack of maintenance during the occupancy by Mrs. Kirkland's aged mother.

Mr. and Mrs. Kirkland began making repairs on the property, and in 1952 Mrs.

Witt and her lawyer husband, from whom Mrs. Witt has since been divorced, moved into the residence. Mrs. Witt testified that her reason for moving to the property was that, for insurance purposes, it was necessary that someone occupy the premises. She intended to stay there only long enough so that the house could be sold. Her father had told her that with luck the house might be sold within six months. The house was never sold and eventually the Kirklands moved into the house with their daughter. The question the court must decide is whether the house was bona fide held for sale during the years 1957, 1958, 1959 and 1960.

Mrs. Kirkland and Mrs. Witt testified that Mr. Kirkland did not consider moving into the Post Road property until he was informed by the Internal Revenue Service that they would no longer allow him to deduct the expenses on this property. However, Mr. Frank E. Piotrowski, an agent of the Internal Revenue Service at the time, testified that in a conversation with Mr. Kirkland on December 2, 1959: "Mr. Kirkland told me that he had spent all this money on this property because he and his wife intended to sell the property at 53d and Howard Street and move into this [the Post Road Property] with his daughter and her family." Other testimony convinces the court that this statement was made prior to Mr. Kirkland's having been informed that the deductions would not be allowed.

The nature and amount of expenditures prior to the move are strongly indicative of an intention to occupy the property. Plaintiffs' exhibit 153 shows expenditures for new furniture to be $2,803.98 during the year 1959. In addition, the exhibit indicates that an additional commitment for furniture expenditures of $2,380.00 for 1959 had not been paid. Many of the expenditures made during 1959, as shown on exhibit 153, were not claimed on the tax return as expenses. Nevertheless, these items are relevant in determining whether or not the property was held for sale. Thus, such items as an expenditure of

$2,288.39 from Marshall Field and Company for the purchase of rugs for the library, and numerous other expenditures for carpeting, as well as expenditures for such appliances as a television, playground equipment, and electric blanket, have also been considered by the court.

■ Furthermore, the evidence of attempts to sell the property during the years in question is not convincing. No effort was made to advertise or enlist a broker to sell or rent the house. Since a substantial offer from a night club operator had been rejected, it was evidently decided for personal reasons that the property would not be used except as a residence. Thus, the most likely use to which the property might be put was removed from consideration. The following language from Weil, et al. Exrs. v. United States, 44–1 U.S.T.C. (1944), is also partially descriptive here:

"It is quite possible and even probable that [he] was ready at all times to sell the property if [he] obtained an offer that would meet with [his] approval. This is true of almost everything that many people own but it does not constitute the holding of property for income nor does it make the property of a business property in any sense. * * * [He] indulged in wishful thinking but never translated [his] thoughts into acts."

Mrs. Witt testified that she paid rent during the years in question. The evidence in this regard is conflicting and, in any event, any rent actually paid would in effect be a mere book entry in view of Mrs. Witt's testimony that her father supported her and would frequently deposit funds in her checking account.

■■ The mere fact that the property was not sold is not conclusive, but is evidence of the taxpayers' intent in holding the property. The court concludes that during the years in controversy the expenses were not incurred for the production or collection of income nor for the management, conservation, or

maintenance of property held for the production of income.

(2) *Sale of the property on 53d and Howard Streets in 1960.*

This residence was purchased by the Kirklands in 1943 and sold in 1960. While living in this residence various expenditures were made, and the question before the court is whether certain of these expenditures were properly treated by taxpayers as capital items. The Government allowed over $9,000.00 as capital improvements, but an additional sum of over $9,000.00 was disallowed. Many of the items disallowed were expenditures for yard labor, furniture, tools, cleaning work, and materials. In addition, there were large expenditures for painting and decorating.

There were numerous exhibits offered by plaintiffs to show that expenditures were made. There is difficulty, however, in that plaintiffs did not prove that the items appearing in the exhibits were items disallowed by the Government. A second problem is that several fixtures and mirrors were transferred to the North Post Road property before the sale, and the witnesses did not appear certain as to which exhibits represented items which remained at the Howard Street property. Finally, there are many instances where an item was treated as a capital expenditure for purposes of the Howard Street property while an item of a similar, almost identical nature, was treated as an expense item for the Post Road property.

█ The court has had some doubt about whether the expenditures for decorating might properly be treated as capital expenditures. Normally, such expenditures are expense items. However, the testimony in this case showed that the decorating was of a very high quality and did add value to the house. Of course, every expenditure presumably adds some value. The test is whether the expenditure substantially or appreciably increases the value of the house or prolongs its life. Stewart Supply Co. v. Commissioner of Internal Revenue, 324 F.2d 233, 234 (2d Cir. 1963). The court concludes that there was no appreciable or substantial increase in value, and that the painting and decorating expenditures can not properly be treated as capital items.

█ Although there was some testimony relating to an extension of a garage—clearly a capital item—this expenditure was not substantiated at the trial nor even claimed on the tax return. The disallowance by the Government of the claimed capital expenditures on the Howard Street property was therefore proper.

(3) *Deductions for travel and entertainment expense.*

█ Mr. Kirkland claimed a deduction for use of a 1950 Buick automobile. He also claimed, and was allowed, a 100% travel deduction on two other cars. There was testimony that Mr. Kirkland would occasionally use the Buick in circumstances where he wanted to drive a more impressive car. It is questionable whether a six-year-old car would serve this purpose. Other testimony indicated that the car was used as a personal car, and Mrs. Witt testified that the Buick was her mother's "pet car." The court finds that the plaintiff has not sustained the burden of showing that this car was used for a business purpose.

█ With regard to the other claimed deductions for travel and entertainment, the evidence was all of a general nature and unsatisfactory. There is no evidence that expenditures in the amounts claimed were in fact made, or if made that they were not partially reflected in the expenses for which plaintiffs have already been given credit. The court cannot find that the Commissioner erred in disallowing the claimed deductions.

(4) *Charitable Contributions.*

█ In the 1957 return a $500.00 contribution to the Omaha Charter Study was disallowed. The Government decided not to contest this contribution in this case. Therefore, this deduction will be allowed. A ten dollar gift to General LeMay was also disallowed. This was

not proven to be for a charitable purpose and cannot be allowed. All other claimed charitable contributions were not substantiated as to amount nor was evidence received which showed that such contributions were actually made. The disallowance by the Government of these items was therefore proper.

The court concludes that plaintiffs are not entitled to the deduction of any of the items disallowed by the Government on the 1957, 1958, 1959, and 1960 tax returns except for the $500.00 contribution not contested by the Government.

The above shall constitute findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

Counsel for the Government will submit an appropriate order in accordance with this memorandum.